UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHELLE WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security Administration,<br><br>Defendant. | Case No. C05-1536-RSL-JPD<br><br>REPORT AND RECOMMENDATION |

I. INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Michelle Williams appeals a final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends reversing the ALJ's decision and remanding for further administrative proceedings. On remand, the ALJ should re-evaluate the opinion of Dr. Wu, or provide specific and legitimate reasons for rejecting it. He should also fully consider the opinions of Drs. Roeben and Reade, reassess plaintiff's residual functioning capacity in light of those opinions, and propound a revised hypothetical that describes all of plaintiff's limitations. Finally, the ALJ should clarify his use, if any, of the drug and alcohol

analysis on any disability determination.

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff is a forty-year-old woman with a high school education. AR 70, 117. She has also completed cosmetology school. AR 117. She has past work experience as a beautician, house cleaner, exotic dancer, parts worker, automobile-parts shipping and receiving clerk, and automobile-parts delivery driver. AR 112.

On March 22, 2002, plaintiff filed an application for SSI. AR 507. She applied for DIB on April 6, 2002. AR 70-72. Plaintiff alleged disability beginning on May 31, 2000, as a result of post-traumatic stress disorder ("PTSD"), depression, low back pain, headaches, stomach problems, and nightmares. AR 70, 111. Plaintiff's applications were denied both initially and upon reconsideration. AR 33-41, 511-19.

Plaintiff requested a hearing, which took place on August 25, 2004. AR 42-45, 551-618. On December 17, 2004, the ALJ issued a decision finding plaintiff not disabled. AR 16-30. Specifically, at step four the ALJ found that plaintiff's residual functional capacity did not preclude her from performing her past work as a housekeeper. AR 29. The ALJ proceeded to step five and found that plaintiff could perform certain medium exertional jobs that exist in significant numbers in the national economy, including janitor. *Id.*

Plaintiff requested administrative review of the ALJ's decision. AR 11. After reviewing additional medical evidence, the Appeals Council denied plaintiff's request for review. AR 7-10. Therefore, the ALJ's December 17, 2004, decision serves as the Commissioner's final decision for purposes of judicial review.

## III. JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) (2005).

## IV. STANDARD OF REVIEW

The court may set aside the Commissioner's denial of social security benefits when the

ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence is defined as more than a mere scintilla but less than a preponderance; "it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal citations and quotations omitted). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citations omitted).

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## V. EVALUATING DISABILITY

As the claimant, Ms. Williams bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a

continuous period of not less than twelve months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Social Security regulations set out a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920 (2005). At step one, the claimant must establish that she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant establishes that she has not engaged in any substantial gainful activity, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments or combination of impairments that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant who meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The Commissioner then uses the RFC to determine whether the claimant can still perform the physical and mental demands of her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is not able to perform her past relevant work, the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in

significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

VI. DECISION BELOW

On December 17, 2004, the ALJ issued a decision finding:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and was insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's asthma, affective disorders not otherwise specified, generalized anxiety disorder, personality disorder, and a history of alcohol and drug abuse in reported remission are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b) [sic].

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: she retains the ability to lift and carry up to 20 pounds frequently and up to 50 pounds occasionally. She can sit, stand, and walk for about 6 hours in an 8-hour work day. Due to asthma, the claimant should avoid working in environments with extreme exposure to dust and fumes. Mood swings restrict the claimant to occasional contact with the public and coworkers.

7. The claimant is able to perform her past relevant work as a house cleaner/housekeeper (20 CFR §§ 404.1565 and 416.965).

8. The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).

9. The claimant has a "high school (or high school equivalent) education" 20 CFR §§ 404.1564 and 416.964).

10. The claimant has no transferable skills from any past relevant work

and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform a significant range of light to medium work (20 CFR §§ 404.1567 and 416.967).

12. Although the claimant's exertional limitations do not allow her to perform the full range of medium work, using Medical-Vocational Rule 203.29 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a janitor (DOT #318.687.018) medium, unskilled (SVP 2) with 39,377 positions in Washington.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. (20 CFR §§ 404.1520(g) and 416.920(g)).

AR 28-29.

VII. ISSUES ON APPEAL

The plaintiff raises five principal arguments on appeal:

1. Did the ALJ erroneously conclude that plaintiff had past relevant work as a housekeeper?

2. Did the ALJ erroneously reject the medical opinions of treating psychiatrist Minjing Wu?

3. Did the ALJ fail to account appropriately for the restrictions described by non-examining psychologist Kent Reade, Ph.D and Gregory Roeben, M.D?

4. Did the ALJ err regarding drug and alcohol analysis? and

5. Was the ALJ's hypothetical question to the vocational expert complete?

VIII. DISCUSSION

A. The ALJ Properly Determined That Plaintiff Had Past Relevant Work as a Housekeeper.

Plaintiff argues that she "did not have past relevant work as a housekeeper either before or after her alleged onset date." Dkt. No. 15 at 6. She argues that her earnings history demonstrates earnings sufficient to presume past relevant work for1997 only, and that in one other part of the record, she reported working at another position during the same time period.

*See* AR 122. She argues that the ALJ should not have "assume[d]" that the 1997 work as a housekeeper was at sufficient levels, and that the ALJ failed to resolve this apparent conflict. Dkt. No. 15.

Step four of the sequential evaluation process requires an ALJ to evaluate a claimant's residual functional capacity and the physical and mental demands of his or her past relevant work to determine whether that work still can be performed. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work is work that (1) has been done within the past 15 years, (2) was substantial gainful activity, and (3) lasted long enough for the plaintiff to have learned how to perform it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). Earnings are the "primary consideration" for determining whether work was at substantial gainful activity levels. 20 C.F.R. § 404.1574(a), 416.974(a). For the period of time between 1990 and 1999, earnings of at least $500 per month give rise to a presumption that the work was substantial gainful activity. 20 C.F.R. §§ 404.1574(b), Table 1, 416.974(b) Table 1; *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001).

The ALJ's finding that plaintiff had past relevant work as a house cleaner is supported by substantial evidence. Plaintiff reported that between 1994 and 1997 she worked as a house cleaner for a Denver maid service for $8.75 per hour, four hours per day, four days per week. AR 163. Based upon this report, plaintiff's work as a housekeeper occurred within the required 15-year window. Additionally, it would have generated income of $560 per month or $60 more than the amount necessary to presume the work was at substantial gainful activity levels. 20 C.F.R. §§ 404.1574(b), Table 1, 416.974(b) Table 1. Finally, because the work occurred over the course of approximately three years, plaintiff would have had ample time to learn how to perform it. Even if plaintiff did report overlapping jobs during this period, because the housekeeper work was part-time, she could have performed multiple jobs. Accordingly, the ALJ's determination that plaintiff had past relevant work as a housekeeper is

supported by substantial evidence and should be affirmed.[1]

B. The ALJ Improperly Rejected the Opinion of Treating Psychiatrist Minjing Wu.

Dr. Wu is a psychiatrist who began treating plaintiff on January 28, 2003. AR 419-20. Dr. Wu provided two formal assessments of plaintiff's functional abilities: one on September 22, 2003, and the other on July 12, 2004. AR 450-57. In the more recent opinion, Dr. Wu diagnosed plaintiff with "bipolar disorder, mixed episode" and possible PTSD. AR 455. He found that objective evidence showed markedly depressed mood and motor agitation. *Id.* He also found that plaintiff had a marked limitation in her ability to learn new tasks and in her ability to respond appropriately and tolerate the pressures and expectations of a normal work setting. AR 456. The ALJ did not give this opinion "significant weight," particularly as it related to plaintiff's ability to respond to and tolerate the pressures of work. AR 28. Plaintiff argues that the ALJ failed to provide adequate reasons for discounting Dr. Wu's opinion. Dkt. No. 15 at 10.

Generally, more weight is to be give to the opinions of treating physicians, particularly when those opinions relate to medical areas within their area of specialization. 20 C.F.R. §§ 404.1527(d)(5); 416.927(d)(5); *Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. *Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001). When a treating physician's opinion is contradicted by other opinions, as it is here, the ALJ may reject it only if he provides "specific and legitimate reasons supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (internal citations and quotations omitted). "This can be done by setting out a detailed and

---

[3]The plaintiff also reported working as a housekeeper from 1991 to 1994 and from 1983 to 1985. AR 112, 161. Earnings amounts during this period are less certain. Additionally, she reported cleaning houses on a less-than-substantial gainful activity basis after her alleged onset. AR 28, 286, 461, 415, 468. Because plaintiff''s 1997 work is sufficient, the Court need not address whether the additional work would also qualify as past relevant work.

thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes,* 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen,* 849 F.2d 418, 421-22 (9th Cir. 1988)).

The ALJ did not provide appropriate reasons for rejecting Dr. Wu's functional limitations. First, the ALJ noted the Dr. Wu's opinions regarding these limitations were rendered on check-the-box type forms. AR 28. Check-the-box type forms may be entitled to less weight when they are not adequately explained or supported by treatment notes, but that was not the case here. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (internal citations omitted). The form contained several handwritten notes and was consistent with several pages of Dr. Wu's notes taken over the course of several years.

Another reason offered by the ALJ for discounting Dr. Wu's assessment was that the ALJ believed it was based largely on plaintiff's self-reports, which he determined not to be credible. *Id.* The degree to which Dr. Wu's opinions were based on plaintiff's self-reports is unclear. The functional limitations section of the psychological/psychiatric evaluation form at issue instructs the evaluator to "[b]ase the degree of limitation on reports by the individual . . . and . . . appropriate tests, along with your own observations." AR 456. Dr. Wu's handwritten notes indicate that "plaintiff is able to care for self and apartment and has trouble handling stress of everyday life" — observations that were likely based upon self-reports. AR 456. However, Dr. Wu's records are also supported by objective findings. These observations include anxiety, restlessness, tangential thinking, "fidgetiness," and irritability. *See* AR 410-14, 416-19, 460-70.

The ALJ also appears to have discounted Dr. Wu's opinion because he found plaintiff's statements in other contexts to be inconsistent with Dr. Wu's opinions. AR 28. Specifically, the ALJ noted that plaintiff had stated that she never had trouble getting along

with bosses, teachers, and other authority and that, despite her alleged limitations, she continued to work at some level. AR 28. The ALJ believed that this work showed at least "some ability to be on time, pay attention, and keep a schedule of some sort." AR 24. Yet Dr. Wu was aware of plaintiff's continued work attempts and nevertheless found the above described restrictions. *See, e.g.*, AR 461, 465, 468.

Ultimately, the ALJ's cursory evaluation and rejection of Dr. Wu's treating report falls short of the specific and legitimate standard required in *Reddick*. There are too many doubts as to the legitimacy of the reasons given for rejecting Dr. Wu's opinion for this Court to affirm. The ALJ should re-evaluate Dr. Wu's opinion on remand, and provide specific and legitimate reasons if he chooses to reject it again.

C. The ALJ's RFC Finding Was Deficient.

ALJs are obligated to consider the opinions of non-examining state agency physicians that relate to the nature and severity of an impairment, or whether a claimant meets or equals a listing. 20 C.F.R. §§ 404.1527(f)(2)(ii), 416. 927(f)(2)(ii). These opinions, however, are entitled to less weight than treating or examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (internal citation omitted). An ALJ must evaluate the opinion of a non-examining source and explain the weight he assigns it. SSR 96-6p (1996).

In August 2002, non-examining psychologist Kent Reade performed a mental RFC analysis of plaintiff, with which Dr. Gregory Roeben concurred in November. AR 336-51. Drs. Reade and Roeben diagnosed plaintiff with bipolar disorder, but found no marked limitations. AR 336-39, 342. They opined that plaintiff had moderate limitations in her ability to carry out detailed instructions and in her ability to maintain attention and concentration for extended periods of time. AR 336. They also found a moderate limitation in plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and in her ability to perform at a consistent pace without an unreasonable number and length of rests. AR 337. They explained that plaintiff's concentration problems

limited her ability to carry out detailed tasks, but that she retained an ability to carry out simple tasks. AR 338. They also noted that plaintiff's daily activities are reasonably active and require her to maintain a schedule. AR 351.

The ALJ accepted the opinion of Drs. Reade and Roeben. AR 26. Specifically, he found that plaintiff retained the ability to "carry out simple tasks in a generally reliable manner." *Id.* He explained that this was supported by plaintiff's activities of daily living and her intermittent work activity. *Id.*

Plaintiff argues that the ALJ erred by failing to include all of these limitations in his RFC and the hypothetical he presented to the vocational expert ("VE"). Dkt. No. 15 at 14. Specifically, she argues that the ALJ failed to account for her moderately impaired ability to maintain concentration and attention for extended periods of time, and her impaired ability to complete a normal workweek adequately without interruption. *Id.* Defendant argues that any such failure on the part of the ALJ was harmless because the past relevant work job of housekeeper is simple, unskilled work. Dkt. No. 16 at 16.

The ALJ's RFC finding was deficient. The ALJ explicitly adopted the opinions of Drs. Reade and Roeben regarding potential capabilities, but included none of the limitations they described in his RFC. AR 29. Although the VE was asked about the impact of limitations involving an inability to complete a regular work schedule, it appears the ALJ did not adopt the results of those hypotheticals. Indeed, those proposed limitations resulted in the VE's opinion that no jobs were available for her. AR 613-14. The ALJ's RFC also contained limitations relating to plaintiff's asthma, e.g., avoiding environments with dust and fumes. AR 29. These restrictions were not presented in the hypothetical question to the VE and could impact plaintiff's ability to work as a housekeeper or janitor, and whether other jobs identified by the VE were consistent with the exertional RFC findings.

The ALJ should re-evaluate plaintiff's RFC in light of the opinions of Drs. Roeben, Reade, and possibly, Dr. Wu, and present a clear hypothetical to the VE that includes all of

plaintiff's limitations.

D. It is Unclear Whether the ALJ Performed Drug and Alcohol Analysis.

Pursuant to the Contract with America Advancement Act, an "individual shall not be considered to be disabled for purposes of [Title II and Title XVI benefits] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Pub. L. No. 104-121, 110 Stat. 847 (March 19, 1996) (codified at 42 U.S.C. §§ 423(d)(2)(C), 1382c((a)(3)(J)). Before applying this statute, however, an ALJ must first conduct the five-step sequential evaluation process and conclude that the claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). If a claimant is found to be disabled and there is medical evidence of plaintiff's drug and alcohol abuse ("DAA"), then the ALJ must apply the sequential evaluation process a second time to determine whether plaintiff would still be disabled if she stopped using the drugs or alcohol. *Id.* It is error for an ALJ to conclude that DAA precludes an award of benefits prior to applying the five-step process first. *Id.*

Here, there is evidence of plaintiff's alcohol use after her alleged onset date. *See* AR 250. Plaintiff argues that the ALJ misapplied the DAA analysis outlined in *Bustamante* before applying it before first finding her disabled. Dkt. No. 15 at 15. Defendant argues that plaintiff "misunder[stood]" the ALJ's analysis, and argues that the ALJ never applied the DAA analysis because first he did not find plaintiff to be disabled. Dkt. No. 16 at 17. She argues that the ALJ found that, even with her DAA, plaintiff was not disabled.

The ALJ's application of the DAA analysis in this case, if any, is ambiguous at best. At one point, he states that "even with alcohol use, [plaintiff] has managed to function adequately enough to work[.]" AR 22. This statement suggests the ALJ considered plaintiff's alcohol use throughout the first sequential evaluation process and concluded she was not disabled. If so, the ALJ would not have been obligated to perform the separation analysis.

Other portions of the record, however, suggest the ALJ may have mixed the first and

second stage evaluations. For instance, at step three, the ALJ identified several limitations that he believed plaintiff had both "with and without alcohol[.] AR 23. He also found that she did not meet the B or C listing criteria "either with or without alcohol." *Id.* Additionally, the ALJ found that plaintiff's alcohol use "negate[d]" two medical opinions and that her "alcohol abuse has played a part in her alleged functional limitations[.]" AR 25. Though it is true that the ALJ never found plaintiff disabled, these statements all suggest that he may have been simultaneously analyzing the effects of plaintiff's alcohol use and whether she was disabled. On remand, the ALJ should clarify his DAA analysis if he is using this as a basis to find her not disabled.

IX. CONCLUSION

For the reasons discussed above, this case should be reversed and remanded for further administrative proceedings not inconsistent with this report and recommendation. A proposed order accompanies this report and recommendation.

DATED this 18th day of July, 2006.

James P. Donohue

JAMES P. DONOHUE
United States Magistrate Judge